# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| NATHAN J. ALLEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:16-cv-00920-JAR |
| | ) |
| MICHAEL BOWERSOX, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Nathan Allen's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1). The State responded. (Doc. No. 6). For the following reasons, Petitioner's Section 2254 petition is **DENIED** and this action is **DISMISSED**.

### I. Background

On October 7, 2010, a jury found Petitioner guilty of first-degree robbery, armed criminal action, attempted first-degree robbery, first-degree assault, felonious restraint, and resisting arrest. At trial, the State presented the following evidence.

On July 28, 2009, at approximately 11:00 p.m., Petitioner arrived by bicycle at a gas station, approached a group of customers, and robbed them at gunpoint. Several weeks later, one of the customers identified Petitioner in a photo spread and subsequent physical lineup. She stated she was "100% certain" Petitioner was the perpetrator. A second customer also identified Petitioner in a photo spread and a physical lineup as the man who robbed her, and she was "very sure" of her identification.

On August 11, 2009, Petitioner robbed a man at gunpoint while the man was waiting at a

1

bus stop to go to work. A few days later, the man identified Petitioner in a lineup as the individual who robbed him, expressing absolute certainty.

On August 13, 2009, Petitioner approached a tire service shop, where the owner and his girlfriend were working. Petitioner grabbed the girlfriend, demanded money from the owner, shot the owner, and proceeded to rob him. After Petitioner left the shop, the girlfriend called the police. Petitioner was subsequently apprehended by police and identified as the shooter by the shop owner and his girlfriend.

Both the gas station and Family Dollar store next to the tire shop had video surveillance tapes of the incidents in their respective locales. Before trial, Petitioner filed a motion for production of that video surveillance and other exculpatory materials. The trial court heard Petitioner's motion and made the following docket entry: "State believes [that it] provided all material that is in its control or that it could obtain by due [diligence]—Copies of BP & Family Dollar Store tapes apparently either were not correctly made or were lost-or were not saved and are no longer available." (Doc. No. 6-4 at 8).

At trial, the State asked various police officers about the contents of the surveillance videos. Petitioner's attorney objected on the basis of the best evidence rule, but the trial court overruled the objections after the State presented evidence that the tapes were not available.

Petitioner testified at trial that on July 28, 2009, he was at his stepfather's home around 11:00 p.m., and thus could not have committed the robbery on that date. Petitioner's wife testified that on August 11, 2009, Petitioner had walked her daughter to the bus stop around 5:15 a.m. Petitioner's stepdaughter testified that Petitioner had walked her to the bus stop that morning because she had to go to work. However, on cross-examination, she was confronted with work records showing that she did not work on that day. Petitioner's stepdaughter then

2

explained that she had gone into work, was told that she was not scheduled to work that day and returned home.

During closing argument, Petitioner's trial counsel addressed the issue of the surveillance videos, stating:

> One video mysteriously has disappeared from the evidence locker. And as the name suggests, the evidence locker, or evidence room, is kept locked. But somehow that video has disappeared.
>
> The second video somehow has nothing on it. The files are empty. There's plenty – you know, if you're a conspiracy theorist, there is plenty of ammunition here for you. Somehow, both videos are gone. Can't bring them in.
>
> Now the police assure you that they looked at the videos, and, yeah, it's [Petitioner] in both of them, of course. Well, I submit to you, ladies and gentlemen, if that was true they would have them here.

(Doc. No. 6-10 at 639). The jury returned a guilty verdict, and the trial judge sentenced Petitioner as a prior felony offender to an effective term of forty-five years' imprisonment.

Petitioner appealed the trial court's decision to permit the officers to testify regarding the contents of the surveillance video, in violation of the best evidence rule. On December 13, 2011, the state appellate court affirmed the trial court's decision. *State v. Allen*, No. ED95900 (Mo. App. Ct. Dec. 13, 2011).

On March 14, 2012, Petitioner filed a pro se motion to vacate, set aside, or correct the judgment or sentence in state court, asserting the following claims: (1) the state trial court erred when it denied his motion to dismiss improperly joined counts; (2) Petitioner's rights were violated when the prosecutor failed to turn over the surveillance videos to the defense; and (3) Petitioner "was subjected to double jeopardy." (Doc. No. 6-8).

Petitioner was appointed counsel, who amended Petitioner's motion to assert the following claims: (1) his trial attorney was ineffective for failing to call two witnesses (Sarah

3

Allen and Donna Johnson); and (2) his trial attorney was ineffective for failing to argue that the surveillance videos, which were not produced by the State, must not have shown Petitioner as the perpetrator. Specifically, Petitioner claims that Ms. Allen (Petitioner's stepmother) would have provided Petitioner with an alibi for the July 29, 2009 robbery, and Ms. Johnson (the manager of the Family Dollar store next door to where the robbery occurred at the tire shop) would have testified that Petitioner was not the man she saw robbing the tire shop.

On November 2, 2012, the motion court held an evidentiary hearing on Petitioner's amended motion. Petitioner, Petitioner's trial counsel, Donna Johnson, and Sarah Allen testified. Petitioner stated that in July 2009, he was living at his father's house exclusively because he and his wife were engaged in a dispute. He testified that on July 28, 2009, he had borrowed his stepmother's car and returned it some time after 9:00 p.m., causing his stepmother to be late to work. Petitioner testified that he told his trial attorney that his stepmother would be able to provide him with an alibi for the July 28 robbery.

Ms. Allen testified that she generally let Petitioner use her car when she was not using it. She stated that on July 28, 2009, Petitioner returned her car around 10:00 or 10:15 p.m., and she remembers that date because she went into work late. On cross-examination, Ms. Allen could not recall on what day of the week July 28 fell, and she could not provide any other reasons for remembering that Petitioner was late on July 28 specifically.

Trial counsel testified that the State was unable to use the surveillance video at trial because the video would not play on the computer, and he had no recollection of whether he argued an adverse inference from the failure of the police to show the video. Trial counsel testified that his notes include no reference to Ms. Allen, but he recalled directing the investigator to contact Petitioner's parents.

4

Donna Johnson testified that after the robbery at the tire shop, police asked for a copy of the surveillance video, and she copied it onto a DVD for them. She stated that she does not know how long surveillance videos are maintained, and she did not make a copy for herself.

On December 21, 2014, the motion court denied Petitioner's motion for post-conviction relief. It held that Petitioner's claim that trial counsel was ineffective for his failure to call Ms. Allen as a witness was without merit. The motion court held that testimony that Petitioner returned Ms. Allen's car around 10:00 or 10:15 p.m. on July 28, 2009, would not have refuted the State's evidence that he rode a bicycle to the gas station and committed a robbery around 11:00 p.m. The motion court also concluded that Ms. Allen's testimony was not credible.

Next, the motion court held that Petitioner's claim regarding his attorney's failure to call Ms. Johnson as a witness was without merit. Petitioner claimed that Ms. Johnson would have testified that he was not the person she saw robbing the tire store. However, Ms. Johnson did not so testify at the evidentiary hearing, and Petitioner presented no other evidence in support of his claim. Lastly, the motion court concluded that Petitioner's claim that trial counsel was ineffective for failing to argue that the surveillance videos must not have shown Petitioner or the State would have produced them at trial was meritless because trial counsel did in fact make that argument at closing.

On appeal, Petitioner pursued only one of his claims: that trial counsel was ineffective for failing to call Ms. Allen as a witness. On March 1, 2016, the state appellate court affirmed the motion court because Ms. Allen's testimony would not have produced a viable defense. *Allen v. State*, No. ED102603 (Mo. App. Ct. March 1, 2016).

On June 21, 2016, Petitioner filed this pro se Section 2254 petition, raising the following grounds for relief:

(1) The trial court erred when it allowed police officers to testify regarding the surveillance videos, in violation of the best evidence rule;

(2) Trial counsel was ineffective because he failed to call Ms. Allen and Ms. Johnson as witnesses or argue that the surveillance videos must not have depicted Petitioner as the robber because the State failed to show the video to the jury;

(3) The trial court erred by denying Petitioner's motion to dismiss improperly-joined counts;

(4) The State failed to disclose exculpatory evidence (the surveillance videos), in violation of *Brady*;

(5) Petitioner's convictions for robbery in the first degree and armed criminal action violated the double jeopardy clause of the Constitution.

(Doc. No. 1).

## II. Discussion

A district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (internal quotation marks

omitted)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

### A. Ground 1: Violation of the Best Evidence Rule

In Ground One of his federal habeas petition, Petitioner contends that the trial court erred by allowing the testimony of the police officers regarding the surveillance video because their testimony violated the best evidence rule. However, "[w]hether evidence was admissible under Missouri's evidence rules does not create a federal constitutional issue that is cognizable under this court's limited habeas corpus jurisdiction." *Glass v. Hurley*, No. 4:11 CV 1806 DDN, 2013 WL 508905, at *8 (E.D. Mo. Feb. 12, 2013) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *see also Middleton v. Roper*, 498 F.3d 812, 820 (8th Cir. 2007) ("[H]abeas review does not lie to correct alleged errors of state law."). Accordingly, Petitioner is not entitled to relief on Ground One of his petition.

7

## B. Grounds 2a-c: Ineffective Assistance of Trial Counsel

In order to state a claim of ineffective assistance of trial counsel, Petitioner must meet the *Strickland* standard: Petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id.* To establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009) (internal quotations and citations omitted).

In Ground 2a, Petitioner asserts that trial counsel was ineffective for failing to call Ms. Allen because she would have provided him with an alibi. However, the motion court held that Ms. Allen's testimony would not have refuted the State's evidence, and it further held that Ms. Allen was not credible. The state court of appeals agreed and determined that Petitioner "failed to overcome the presumption that trial counsel acted effectively." (Doc. No. 6-7 at 6).

Upon careful review, the Court concludes that the determinations of the Missouri state courts are fairly supported by the record, reasonably apply federally established federal law, and are entitled to deference by this Court. *See Marshall v. Lonberger*, 459 U.S. 422, 433 (1983). Ms. Allen's testimony does not provide Petitioner with an alibi for the time during which the July 22 robbery took place, and 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court,

8

but not by them. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Accordingly, Petitioner's claim asserted in Ground 1b will be denied.

In Ground 2b, Petitioner asserts that the motion court erred when it determined that Petitioner failed to present evidence that Ms. Johnson would have testified in Petitioner's favor. Here, although not raised by Respondent, the Court concludes that Ground 2b is procedurally defaulted. Specifically, Petitioner only appealed the motion's court ruling as it related to Ms. Allen, and ineffective assistance of counsel in not raising a claim on appeal from the denial of post-conviction relief does not constitute cause for a procedural default. *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012).

Similarly, Petitioner did not appeal Ground 2c, in which Petitioner claims the motion court erred when it denied Petitioner's claim of ineffective assistance of counsel with regard to the surveillance video. Thus, Ground 2c is procedurally defaulted. Further, the claim fails on the merits because Petitioner's trial counsel did in fact raise this issue at closing argument, inferring to the jury that the surveillance videos did not depict Petitioner. Accordingly, Petitioner's arguments as to Grounds 2a, 2b, and 2c are meritless.

### C. Grounds 3-5

#### i. Procedural Default

Petitioner asserts that the trial court erred by denying Petitioner's motion to dismiss improperly-joined counts (Ground 3); the State failed to disclose exculpatory evidence (the surveillance videos), in violation of *Brady v. Maryland* (Ground 4); and his convictions for robbery in the first degree and armed criminal action violated the double jeopardy clause of the Constitution (Ground 5). Petitioner acknowledges that Grounds 3 through 5 were not raised on

direct appeal, and thus are procedurally defaulted. However, Petitioner contends that his failure is excused pursuant to *Martinez v. Ryan*.

"Ordinarily, a federal court reviewing a state conviction in a [federal habeas corpus] proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citation omitted). For Missouri prisoners, claims that could have been but were not raised on direct appeal or on appeal from the denial of a post-conviction motion are procedurally defaulted. *Moore-El v. Luebbers*, 446 F.3d 890, 897-98 (8th Cir. 2006). A state prisoner, however, may obtain federal review of a defaulted claim by showing cause for the default and actual prejudice as a result of the constitutional violation, or that he is actually innocent of the crimes for which he was convicted. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Here, Petitioner asserts that *Martinez v. Ryan* applies to excuse his procedural default because his post-conviction counsel was ineffective when post-conviction counsel failed to include these claims in the amended post-conviction motion. In *Martinez*, the Supreme Court determined that a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to the error of post-conviction counsel. 566 U.S. at 4. However, *Martinez* does not apply to Petitioner's claims because Grounds 3, 4, and 5 do not raise ineffective assistance of counsel claims, but rather raise claims that should have been raised on direct appeal.

To the extent Petitioner is making a claim of ineffective assistance of direct appeal counsel, that claim is procedurally defaulted because it was not raised in the state post-conviction proceedings. *See Taylor v. Bowersox*, 329 F.3d 963, 971 (8th Cir. 2003); *Bland v. Pash*, No. 15-

10

0041-CV-W-GAF-P, 2015 WL 3542816, at *3 (W.D. Mo. June 4, 2015); *see also Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (declining to extend the holding of *Martinez*, that ineffective assistance of post-conviction counsel could constitute cause to excuse a procedural default of a claim that trial counsel was ineffective, to a claim that direct appeal counsel was ineffective).

In conclusion, Petitioner's Grounds 3 through 5 are procedurally defaulted. However, even if the Court were to address those grounds on the merits, they would fail.

### ii. Merits

#### a. Ground 3

With regard to Ground 3, the issues of joinder and severance are matters of state law. As stated previously, "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67; 28 U.S.C. § 2254. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Id.* Rather, "[t]o obtain federal habeas corpus relief, the joinder "must actually render petitioner's state trial fundamentally unfair and hence, violative of due process." *Smith v. Bowersox*, No. 4:12 CV 2089 DDN, 2014 WL 1377810, at *5–6 (E.D. Mo. Apr. 8, 2014) (quoting *Robinson v. Wyrick*, 735 F.2d 1091, 1094 (8th Cir. 1984).

Under Missouri law, "[j]oinder addresses the issue of what crimes can be charged in a single proceeding." *State v. Chambers*, 234 S.W.3d 501, 508 (Mo. Ct. App. 2007). Missouri courts may join:

> [a]ll offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan . . . .

Mo. Sup.Ct. R. 23.05. Petitioner argues that the court should not have joined the charges because they involved different witnesses and different robberies. However, Petitioner's argument does not detract from the similar character of his charged offenses. *See State v.*

11

*Langston*, 889 S.W.2d 93, 96 (Mo. Ct. App. 1994). The state court did not err in joining the charges.

"Joinder and severance are distinct issues for review." *State v. Langston*, 889 S.W.2d 93, 96 (Mo. Ct. App. 1994).

> The key question in determining whether severance should be granted is one of prejudice. The defendant must make a particularized showing of substantial prejudice. There must be both an abuse of discretion and a clear showing of prejudice before a denial of severance can be reversed. In determining prejudice the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence, and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense.

*State v. Hughes*, 787 S.W.2d 802, 804 (Mo. Ct. App. 1990). Here, Petitioner makes no showing of substantial prejudice. Petitioner was charged with a series of robberies committed on July 29, 2009, August 11, 2009, and August 13, 2009. The evidence in the record suggests that they were of the same or similar character, and the evidence does not demonstrate a level of complexity that would necessitate severance. Accordingly, Ground 3 has no merit and will be denied.

### b. Ground 4

In Ground 4, Petitioner asserts a *Brady* violation; namely, that the State failed to disclose the surveillance videos. Petitioner's trial counsel testified in the state post-conviction evidentiary hearing that he requested the videos, but the State indicated it was unable to get them to play on a computer. Petitioner's counsel also filed a *Brady* motion with the state trial court. The issue was discussed with the trial judge, and the trial court made a record that the tapes were "either not correctly made or were lost." At trial, Petitioner's trial counsel argued that an adverse inference may be made based on the State's failure to show the tapes to the jury.

To establish a *Brady* violation, the movant bears the burden of showing that (1) the government suppressed evidence, either willfully or inadvertently; (2) the evidence was

12

favorable to him, either because it was exculpatory or impeaching; and (3) it was material to the outcome at trial. *Masten v. United States*, 752 F.3d 1142, 1146 (8th Cir. 2014).

Here, Petitioner argues that the surveillance footage was necessary to attack the credibility and reliability of the officer who testified that the footage showed Petitioner as the perpetrator. However, the Court concludes that Petitioner cannot satisfy the third component, i.e. "materiality," sufficient to overcome the procedural default. *Strickler v. Greene*, 527 U.S. 263, 282 (1999). The surveillance videos only recorded one of the three robberies for which Petitioner was tried, and multiple eyewitnesses identified Petitioner as the perpetrator of the robberies in question, thus minimizing the significance of the surveillance videos when viewed in light of the evidence as a whole. Accordingly, Ground 4 will be denied.

### c. Ground 5

In Ground 5, Petitioner asserts a violation of the Double Jeopardy Clause of the Constitution. The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life and limb." The Double Jeopardy Clause has been interpreted as protecting against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Petitioner argues that "[i]t has been well established that when a person is convicted of Robbery 1st Degree, they cannot also be convicted of Armed Criminal Action (ACA)." (Doc. No. 6-8 at 11). However, the United States Supreme Court has expressly held that cumulative sentences for robbery and armed criminal action under Missouri law do not violate double

jeopardy. *See Hunter*, 459 U.S. at 368-69 ("Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."). Accordingly, Petitioner's Ground 5 has no merit and will be denied.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Nathan Allen's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that the Court finds that, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

A judgment dismissing this case is filed herewith.

Dated this 16th of September, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

14